IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No: 3:09-cv-13723

**CHERYL SEARCY, as Personal**
**Representative of the Estate of Carol**
**LaSard,**

    **Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO**
**COMPANY, and PHILIP MORRIS USA,**
**INC.,**

    **Defendants.**

### ORDER DENYING DEFENDANTS' RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

THIS CAUSE came before the Court upon Defendant Philip Morris USA, Inc.'s Renewed Motion for Judgment as a Matter of Law and, in the Alternative, for a New Trial Based on Insufficient Evidence of Brand Usage (ECF No. 273); Defendants' Renewed Motion for Judgment as a Matter of Law on Plaintiff's Fraudulent Concealment and Conspiracy Claims or, in the Alternative, for a New Trial (ECF No. 274); and Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (ECF No. 275). Plaintiff responded [277], [278], [279]. These matters are therefore ripe for review. UPON CONSIDERATION of the Motions, Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, this Court enters the following Order.

**I.      BACKGROUND**

On March 25, 2013, this Court commenced a jury trial in the above-styled action. The jury returned a verdict on April 1, 2013, finding for Plaintiff on all her tort claims (negligence,

1

strict liability, fraudulent concealment, conspiracy to fraudulently conceal) and awarding Plaintiff $6,000,000.00 in compensatory damages. See Jury Verdict, (ECF No. 251). Phase II of the trial then commenced, and the jury was read instructions on punitive damages. The jury returned a verdict on punitive damages, finding that $10,000,000.00 in punitive damages should be assessed against each Defendant. See Jury Verdict (Phase II), (ECF No. 253). On June 5, 2013, following briefing from the Parties, this Court entered an Order on the Proper Form of Judgment to Be Entered in this Case (ECF No. 267), finding that Defendants are jointly and severally liable for the total amount of compensatory damages found by the jury, and each liable for the amount of punitive damages assessed against them. Final Judgment (ECF No. 268) was entered that same day.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 50(b), Defendants now renew their motions for judgment as a matter of law. Under Rule 50, "[a] party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as 'there is no legally sufficient evidentiary basis for a reasonable jury to find'" for the non-moving party. Chaney v. City of Orlando, Fla., 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (citing Fed. R. Civ. P. 50)). Judgment as a matter of law should only be granted "when there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004); see also Arthur Pew Constr. Co. v. Lipscomb, 965 F.2d 1559, 1563 (11th Cir. 1992) (stating that the "usual inquiry" under Rule 50 is "sufficiency, i.e. whether the evidence was sufficient to submit [the issue] to the jury").

"[I]n ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." Chaney, 483 F.3d at 1227 (citing Lipphardt, 267 F.3d at 1186; Arthur Pew, 965 F.2d at 1563). When reviewing a Rule 50(b) motion, the court must look at the evidence in the record and draw all inferences in favor of the non-moving party. Cleveland, 369 F.3d at 1192–93 (citing Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 148–151 (2000)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. (quoting Reeves, 530 U.S. at 150). A party may join a renewed motion for judgment as a matter of law, with a motion for a new trial under Rule 59 in the alternative. Fed. R. Civ. P. 50(b). A motion for a new trial should be granted only when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice." Lipphardt, 267 F.3d at 1186 (quoting Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984)).

**A. Defendant Philip Morris USA, Inc.'s Renewed Motion for Judgment as a Matter of Law and, in the Alternative, for a New Trial Based on Insufficient Evidence of Brand Usage**

This Court turns first to the Renewed Motion for Judgment as a Matter of Law filed by Defendant Philip Morris USA, Inc. ("PM USA"). Therein, PM USA argues that is is entitled to judgment as a matter of law because Plaintiff did not proffer sufficient proof to allow a reasonable jury to conclude that PM USA cigarettes were a legal cause of Carol LaSard's ("LaSard") death. Def.'s Renewed Mot., at 1 (ECF No. 273). Specifically, PM USA maintains (1) Plaintiff provided insufficient evidence to allow a jury to determine the quantity of PM USA cigarettes LaSard smoked, and (2) there is no evidence that LaSard smoked PM USA brand cigarettes before 1981, the date by which Plaintiff's expert witnesses conceded it became more

3

likely than not that LaSard would still have developed lung cancer even if she had quit smoking at that time. Id. Plaintiff disagrees, contending that PM USA cannot meet its heavy burden to show no legally sufficient evidentiary basis for the jury's verdict against it. Resp., at 1 (ECF No. 277).

In this trial, Plaintiff presented the jury with evidence regarding LaSard's use of cigarettes manufactured by PM USA, expert testimony regarding the causation of LaSard's lung cancer, expert testimony regarding LaSard's addiction to cigarettes, and fact witness testimony that LaSard smoked PM USA's so-called "health" and "light" cigarettes, thinking that they were safer and would help her quit smoking. See, e.g. Mar. 25, 2013 Trial Tr., at 44:21–23, 46:7–16 (ECF No. 277-1); Mar. 28, 2013 Trial Tr., at at 31:3–8 (ECF No. 277-6); Mar. 27 Trial Tr., at 70:3–22 (ECF No. 277-4); Mar. 27 Trial Tr., at 134:20–135:5 (ECF No. 277-5). Additionally, Plaintiff also introduced into evidence the 2010 Surgeon General Report, which includes the conclusion: "The evidence on the mechanisms by which smoking causes disease indicates that there is no risk-free level of exposure to tobacco smoke." Report, at 9 (ECF No. 277-3).

Both LaSard's daughter and former son-in-law testified that she smoked multiple PM USA brands. James Searcy, LaSard's former son-in-law, testified that LaSard smoked about a pack a day and specifically referenced her smoking the PM USA brands Benson & Hedges, Virginia Slims, and Merit. See Mar. 27, 2013 Trial Tr., at 67:25–68:7 (ECF No. 277-4). Cheryl Searcy, LaSard's daughter, also stated that her mother smoked the PM USA brand Merit on a regular basis. See Mar. 27, 2013 Trial Tr., at 134:4–6 (ECF No. 277-5). PM USA's contention

that the testimony on which brands LaSard smoked and when was purely speculative is without merit.[1] Def.'s Renewed Mot., at 4.

One of Plaintiff's expert witnesses, Dr. David Burns, a pulmonologist who has worked for decades with the Surgeon General's Office and other agencies, testified unequivocally that PM USA cigarettes caused LaSard's lung cancer. See Mar. 25, 2013 Trial Tr., at 44:21–23 (ECF No. 277-1). PM USA did not rebut this assertion by naming an expert to testify that the use of PM USA cigarettes was insufficient to contribute substantially to the plaintiff's illness, which PM USA has done in other Engle progency cases. See Resp., at 5, n. 1; Defense Expert Reports in Other Cases (ECF No. 277-2). Another expert witness, Dr. Michael Cummings, who specializes in nicotine addiction research, testified that LaSard was addicted to PM USA cigarettes, that the PM USA brand low-nicotine cigarettes LaSard smoked were engineered to deliver an addictive dose of nicotine, and that those specifically designed low-nicotine cigarettes did maintain and sustain LaSard's addiction. See Mar. 28, 2013 Trial Tr., at at 31:3–8, 124:4–7, 133:1–11 (ECF No. 277-6). Based on this evidence, a reasonable jury could find that PM USA's cigarettes were a legal cause of LaSard's death.

Additionally, the jury's specific findings here were not against the great weight of the evidence such that a new trial should be ordered. After hearing testimony from Plaintiff and

---

[1] This Court notes that U.S. District Judge Marcia Howard in another Engle progeny case denied a similar motion for judgment as a matter of law. See Denton v. R.J. Reynolds, et al., Case No. 3:09-cv-13723-MMH-JBT, Aug. 1, 2012 Trial Tr., at 157:14–16 (ECF No. 277-9). Judge Howard noted that the expert's testimony that all of the cigarettes that decedent smoked contributed to her illness and the plaintiff's testimony that decedent smoked a certain brand of cigarettes for some period of time in the 1980s provided a legally sufficient basis for the jury to find for the nonmoving party. Id. at 156:14–23. Judge Howard noted that while the jury is free to accept or reject the testimonies of plaintiff's expert and plaintiff, "[T]he only conclusion can be that the plaintiff has presented sufficient evidence for reasonable and fair-minded persons, in the exercise of impartial judgment, to reach different conclusions." Id. at 157:1–14.

Defendants, including the testimony discussed above, and being instructed by this Court, the jury returned a verdict finding, among other things, that LaSard was addicted to cigarettes, that LaSard's addiction was a legal cause of her lung cancer and death, and that smoking cigarettes manufacted by PM USA was a legal cause of LaSard's lung cancer and death. See Jury Verdict, at 1–2 (ECF No. 251). The jury apportioned 40% of fault that was a legal cause of LaSard's death to LaSard herself, 30% to Reynolds, and 30% to PM USA. See id. at 3. Here, due to the testimony presented, there was sufficient evidence for the jury to conclude that LaSard smoked and was addicted to cigarettes manufactured by PM USA and that her smoking those cigarettes caused her lung cancer and death. Accordingly, PM USA's Renewed Motion for Judgment as a Matter of Law must be denied.

  **B. Defendants' Renewed Motion for Judgment as a Matter of Law on Plaintiff's Fraudulent Concealment and Conspiracy Claims or, in the Alternative, for a New Trial**

Defendants also argue that they are entitled to judgment as a matter of law, or at least a new trial, on Plaintiff's claims for fraudulent concealment and conspiracy because Plaintiff failed to meet her burden of proof on those claims. See generally Defs.' Renewed Mot. (ECF No. 274). Defendants incorporate the arguments set forth in their other post-trial motions as if fully set forth in the instant Motion. Id. at 1, n.1. Plaintiff responds that Defendants seek to set aside the jury's verdict by cherry-picking record excerpts, ignoring Plaintiff's ample evidence, and asking the Court to improperly draw all inferences in favor of Defendants. Resp., at 1 (ECF No. 278).

Defendants' main argument is that Plaintiff failed to provide evidence on the element of detrimental reliance. Detrimental reliance is an essential element of fraudulent concealment under Florida law. See Philip Morris USA, Inc. v. Naugle, 103 So.3d 944, 947 (Fla. Dist. Ct. App. 2012) ("A claim of fraudulent misrepresentation and/or concealment requires proof of

6

detrimental reliance on a material misrepresentation."). "If a plaintiff claims to be misled, but cannot demonstrate a causal connection between the defendant's conduct and the plaintiff's misapprehension, the plaintiff cannot recover." Id. (quoting Humana, Inc. v. Castillo, 728 So.2d 261, 265 (Fla. Dist. Ct. App. 1999)). Nevertheless, "it is immaterial whether [the statement] passes through a direct or circuitous channel in reaching [the representee], provided it be made with the intent that it shall reach him and be acted on by the injured party." Refined Sugars Inc. v. Southern Commodity Corp., 709 F. Supp. 1117 (S.D. Fla. 1988) (quoting Harrel v. Branson, 344 So. 2d 604, 606 (Fla. Dist. Ct. App. 1977)).

Defendants' arguments are unavailing. The Engle findings "preclusively establish the Tobacco Companies engaged in a conspiracy to conceal or omit information regarding the health effects of cigarettes and their addictive nature with the intention that smokers and the public would rely on the information to their detriment." Philip Morris USA, Inc. et al. v. Putney, --- So.3d ----, Case Nos. 4D10-3606, 4D10-5244, 2013 WL 2494172 at *2 (Fla. Dist. Ct. App. June 12, 2013); see also Philip Morris USA, Inc. v. Naugle, 103 So.3d 944, 947 (Fla. Dist. Ct. App. 2012); Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla. 2006). As a number of Florida appellate courts have recognized, a jury verdict in favor of an Engle plaintiff on her fraudulent concealment and conspiracy claims is not unreasonable where the plaintiff presents sufficient evidence from which the jury could infer that the smoker relied "(1) on pervasive misleading advertising campaigns for cigarettes in general and (2) on the false controversy created by the tobacco industry during the years she smoked (aimed at creating doubt among smokers that cigarettes were hazardous to health) without the necessity of proving [the smoker] relied on any specific statement from a specific co-conspirator." Putney, 2013 WL 2494172 at *3; see also R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060 (Fla. Dist. Ct. App. 2010); Philip Morris

USA, Inc. v. Kayton, 104 So.3d 1145 (Fla. Dist. Ct. App. 2012) (despite the plaintiff's inability to recall a specific statement by an Engle conspirator, her testimony that relied on billboard and magazine advertising was sufficient to deny a post-trial motion for directed verdict); Philip Morris USA Inc. v. Cohen, 102 So.3d 11, 14 n. 2 (Fla. Dist. Ct. App. 2012); R.J. Reynolds Tobacco Co. v. Webb, 93 So.3d 331 (Fla. Dist. Ct. App. 2012).

This case is similar to Martin, which remains good law in Florida and continues to be relied upon by Florida appellate courts, despite Defendants' disagreement with the holding.[2] In Martin, the Court rejected the tobacco company defendant's argument that plaintiff failed to prove the reliance element of her fraudulent concealment claim because she put on no direct evidence showing decedent relied on information put out by the tobacco companies omitting scientific findings on the harmful effects of smoking. Martin, 53 So.3d at 1069. The Court ruled that there was abundant evidence "from which the jury could infer [decedent's] reliance on pervasive misleading advertising campaigns . . . for cigarettes in general, and on the false controversy created by the tobacco industry during the years [decedent] smoked aimed at creating doubt among smokers that cigarettes were hazardous to health." Id. at 1069–70 (citing Bullock v. Philip Morris, USA, Inc., 71 Cal. Rptr. 3d 775, 792 (Cal. Ct. App. 2008) (plaintiff was not required to prove actual reliance on tobacco company's specific misrepresentation where there was evidence that the company sustained a broad-based public campaign for many years disseminating misleading information and creating a controversy over the adverse health effects of smoking intending that current and potential smokers would rely on the misinformation); Burton v. R.J. Reynolds Tobacco Co., 208 F. Supp. 2d 1187, 1203 (D. Kan. 2002) (jury could

---

[2] Numerous decisions from Florida appellate courts have followed Martin since it was decided in December 2010. See, e.g. Putney, 2013 WL 2494172; Naugle, 103 So.3d 944; Webb, 93 So.3d 331.

infer plaintiff's reliance where evidence showed [tobacco companies] "represented to the public that they would take it upon themselves to investigate and determine whether there were health consequences of smoking," but despite evidence of cigarettes' harmful effects [Reynolds] "engaged in a publicity campaign telling the public that whether there were negative health consequences from smoking remains an 'open question.'")).

Here, Plaintiff's case is arguably even stronger than Martin, as Plaintiff did present direct evidence that decedent detrimentally relied upon information put out by Defendants omitting scientific findings on the harmful effects of smoking. The jury was presented with testimony from LaSard's daughter and former son-in-law that while LaSard may have known smoking could be harmful to her health, she turned to smoking low-tar and low-nicotine cigarettes because Defendants advertised them as safer and healthier than regular cigarettes. Plaintiff testified that her mother saw cigarette advertising on television and in magazines. Mar. 27, 2013 Trial Tr., at 53:12–54:11 (ECF No. 278-1). James and Cheryl Searcy both testified that LaSard smoked low-tar cigarettes because she thought they were safer and healthier. See Mar. 27, 2013 Trial Tr., at 70:3–22 (ECF No. 278-1); Mar. 26, 2013 Trial Tr., at 134:20–135:9 (ECF No. 278-2). James Searcy also testified that LaSard smoked low nictotine cigarettes because she thought she could use them to "wean herself off cigarettes gradually." Mar. 27, 2013 Trial Tr., at 70:20–22 (ECF No. 278-1).

The jury was also presented with evidence from expert witnesses regarding the behavior of Defendants. The jury heard testimony that Defendants advertised low-tar cigarettes as healthier, even though they knew they were not, and marketed several brands, including the brands that Mrs. LaSard smoked (Merit, Carlton, and Doral), as "healthy cigarettes" because they contained less tar and nicotine. See Mar. 26, 2013 Trial Tr., at 13:13–14:20; 19:6–22:3

(ECF No. 278-4); Mar. 26, 2013 Trial Tr., at 134:4 (ECF No. 278-6). Dr. Burns also testified that Defendants developed and marketed low-tar and low-nicotine cigarettes to keep people from quitting. Mar. 26, 2013 Trial Tr., at 13:13–13:20 (ECF No. 278-4). Dr. Cummings explained that Defendants marketed low-nicotine cigarettes to "intercept" smokers like LaSard "before they would quit to give them an excuse and to keep smoking." Mar. 28, 2013 Trial Tr., at 120:3–10 (ECF No. 278-6). Furthermore, Dr. Cummings testified that the cigarette companies knew smokers were interpreting their advestising claims about low-nicotine cigaretes as meaning smokers were getting lower tar and nicotine when they were not. Mar. 28, 2013 Trial Tr., at 132:3–9 (ECF No. 278-6). Thus, the jury was presented with testimony that Defendants deliberately concealed from smokers, including LaSard, the information that low-tar and low-nicotine cigarettes were not any safer than other cigarettes and continued to market these "light" cigarettes as an alternative to quitting smoking. Mar. 26, 2013 Trial Tr., at 19:6–18 (ECF No. 278-4). Ultimately, the jury heard Dr. Burns offer his ultimate conclusion on whether the omissions and concealment of the Defendants were a cause or one of the causes of LaSard's lung cancer and death: "My conclusion is that their withholding of information was indeed a cause of her lung cancer by continuing her smoking behavior and therefore continuing her increase in risk." Mar. 26, 2013 Trial Tr., at 51:18–21 (ECF No. 278-4). Dr. Cummings also testified that Defendants' fraudulent concealment regarding low nicotine cigarettes substantially contributed to LaSard's addiction, and therefore, her continued smoking. Mar. 28, 2013 Trial Tr., at 133:23–134:2 (ECF No. 278-6).

Accordingly, Plaintiff presented sufficient evidence for a jury to determine that LaSard detrimentally relied upon the misrepresentations and concealment of Defendants regarding the health risks associated with smoking. The jury could reasonably infer from all the record

evidence that Defendants' fraudulent concealment and conspiracy were a substantial factor in LaSard's failure to quit smoking successfully in time to avoid injury. For the same reason, the jury's finding of reliance here was not against the great weight of the evidence. Accordingly, the jury's verdict should not be disturbed and Defendants' motion must fail.

### C. Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial

Defendants' third motion is based upon the argument that the Engle findings could not be used to remove Plaintiff's burden to prove the elements of her claims and thus, Plaintiff failed to prove her claims. See generally Defs.' Renewed Mot. (ECF No. 275). Defendants concede that this Court has already considered and rejected the arguments contained in their Motion. See Defs.' Renewed Mot., at 1. Nevertheless, Defendants filed their Motion "in an abundance of caution to ensure that they are preserved for further review." Id. This Court agrees that the numerous arguments made in support of Defendants' Motion have been fully considered by and ruled upon by other judges of this district. See Waggoner v. R.J. Reynolds Tobacco Co., 835 F.3d 1244 (M.D. Fla. 2011); Smith v. R.J. Reynolds Tobacco Co., et al., Case No. 3:09-cv-10048-J-32JBT (M.D. Fla. Aug. 14, 2013). In a very recent opinion, the Eleventh Circuit also rejected Defendants' arguments. See Walker v. R.J. Reynolds Tobacco Co., Nos. 12-13500, 12-14731, 2013 WL 4767017 at *1, 8-11 (11th Cir. Sept. 6, 2013). Thus, with this clear, binding precedent, Defendants' arguments must fail here. Plaintiff was entitled to rely upon the Engle findings to establish the conduct elements of her claim, consistent with due process and Florida preclusion law. See also Waggoner, 835 F.3d at 1279; Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419 (Fla. 2013); R.J. Reynolds Tobacco Co. v. Jimmie Lee Brown, 70 So. 3d 707 (Fla. Dist. Ct. App. 2011); Martin, 53 So. 3d 1060.

As noted by all Parties, Defendants' Motion does not contain novel arguments. The Court in <u>Smith</u> addressed a similar situation, concluding "the Court believes that in ruling on [Defendant's] Rule 50(b) motion it is appropriate to rely on the Court's prior rulings on the same or similar arguments previously made by Reynolds." <u>Smith</u>, Case No. 3:09-cv-10048-J-32JBT, at 1. The Court in <u>Smith</u> subsequently found that Reynolds was not entitled to judgment as a matter of law and denied Reynolds' Rule 50(b) motion. This Court agrees that such a course of action is appropriate in the above-styled case. Accordingly, for purposes of the Rule 50(b) motion, this Court adopts the previously made findings of fact and conclusions of law as they were made in relation to Defendants' prior arguments on these same issues. Defendants fail to meet their burden that there was no legally sufficient evidentiary basis for the jury's verdict. This Court finds that Defendants are not entitled to judgment as a matter of law or a new trial on this basis either.

## III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED as follows:

1. Defendant Philip Morris USA, Inc.'s Renewed Motion for Judgment as a Matter of Law and, in the Alternative, for a New Trial Based on Insufficient Evidence of Brand Usage (ECF No. 273) is DENIED.

2. Defendants' Renewed Motion for Judgment as a Matter of Law on Plaintiff's Fraudulent Concealment and Conspiracy Claims or, in the Alternative, for a New Trial (ECF No. 274) is DENIED.

3. Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (ECF No. 275) is DENIED.


DONE AND ORDERED in Chambers at Miami, Florida, this 11th day of September, 2013.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All counsel of record